■ ANTHONY A. RUSSO, JR., Appellant, v DAN PADOVANO et al., Respondents. — Order modified in accordance with memorandum and, as modified, affirmed without costs. All concur, Cardamone, J. P., not participating. Memorandum: Plaintiff Anthony A. Russo operated a counselling service and initiated a "help hotline referral service." Plaintiff's wife contacted defendant *Syracuse Herald-Journal* and requested publicity for the hotline service. In connection therewith she forwarded to the *Herald-Journal* a newspaper article about plaintiff and several of his professional cards which represented that he was a psychotherapist, a religious counsellor, and a marriage and family counsellor. Defendant Padovano, a reporter for the *Herald-Journal,* was assigned to investigate plaintiff's background and the operation of the hotline referral service. Under Padovano's by-line the *Herald-Journal* published two articles concerning plaintiff which gave rise to the underlying action for libel. Plaintiff claims that the articles portrayed him as "holding himself out to the general public as a medical doctor," a "phony doctor," a "person with a fraudulent profession," and a "person not worthy of belief." After joinder of issue and the filing of plaintiff's answers to interrogatories, defendants *Herald-Journal,* Padovano and Steven Rogers, an editor of the newspaper, moved for summary judgment dismissing the complaint. Plaintiff appeals from the order granting that motion. Special Term found, and we agree, that the subject articles were libelous per se. It is for a court to decide in the first instance whether the writings are susceptible to the particular defamatory meaning which plaintiff ascribes to them *(Tracy v Newsday, Inc.,* 5 NY2d 134, 136; *Handelman v Hustler Mag.,* 469 F Supp 1048; Prosser, Torts [4th ed], § 111, pp 747-748). In carrying out that function, the articles should be read as a whole and the statements should be construed together and measured by the effect they would have on the average reader *(James v Gannett Co.,* 40 NY2d 415, 419-420; *November v Time, Inc.,* 13 NY2d 175, 178-179; *Tracy v Newsday, Inc., supra,* p 137). Read in that manner the statements specified in the amended complaint, as well as the articles containing them, are clearly susceptible to an interpretation that plaintiff was fraudulently representing himself to the public as a medical doctor or licensed

psychologist. Since such interpretation would expose plaintiff to public contempt, ridicule, aversion or disgrace *(Rinaldi v Holt, Rinehart & Winston,* 42 NY2d 369, 379, cert den 434 US 969) and would affect plaintiff in his business by imputing fraud, dishonesty, misconduct or unfitness *(Four Star Stage Light. v Merrick,* 56 AD2d 767; see, also, *Terry v County of Orleans,* 72 AD2d 925, 926), the articles constitute libel per se. Accordingly, plaintiff has set forth a prima facie case by alleging writings susceptible to a defamatory meaning and by alleging the falsity of that imputation (see *Rinaldi v Holt, Rinehart & Winston, supra,* p 380). In order to prevail on their motion for summary judgment, defendants must establish a defense of justification or privilege sufficiently to warrant judgment as a matter of law *(Zuckerman v City of New York,* 49 NY2d 557, 562). Defendants claim that the defamatory statements specified in the amended complaint were either true or were instances of permissible opinion or "neutral reportage". However, the libel which is at the heart of this action emanates not from the falsity of any of the specified statements but from the meaning ascribed to them when read in context and taken as a whole. "A plea of truth as justification must be as broad as the alleged libel and must establish the truth of the precise charges therein made" *(Crane v New World Tel. Corp.,* 308 NY 470, 475; 34 NY Jur, Libel and Slander, § 80, p 555). Nothing in defendants' affidavit establishes the truth of the specific libel claimed by plaintiff and it must remain for resolution by the trier of fact. Additionally, though various statements specified by plaintiff may be characterized as permissible opinion, the precise libel charged cannot. It amounts to an accusation of fraud and personal dishonesty which is not protected opinion *(Rinaldi v Holt, Rinehart & Winston, supra,* p 382). Finally, the claim of "neutral reportage" is without merit. Far from merely reporting the opinion of others, the articles state a number of other facts and opinions supporting the implication of fraud and professional misconduct by plaintiff. "[A] publisher who in fact espouses or concurs in the charges made by others * * * cannot rely on a privilege of neutral reportage. In such instances he assumes responsibility for the underlying accusations" *(Edwards v National Audubon Soc.,* 556 F2d 113, 120, cert den *sub nom. Edwards v New York Times Co.,* 434 US 1002). Defendants' contention that judgment is also warranted on its claim of the constitutional privilege afforded publishers and journalists is also without merit. Initially, we note that Special Term erred regarding the proper standard to be applied in this case. While plaintiff is a private person whose conduct is, at least arguably, a matter of public concern (see *Chapadeau v Utica Observer-Dispatch,* 38 NY2d 196, 199; *Cottom v Meredith Corp.,* 65 AD2d 165), that does not necessarily mean that the "gross irresponsibility" standard set by the Court of Appeals in *Chapadeau v Utica Observer-Dispatch (supra)* is applicable. The Supreme Court in *Gertz v Robert Welch, Inc.,* held that "the States may not permit recovery of presumed * * * damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth" (418 US 323, 349). Plaintiff's action is one for libel per se; he makes no claim of actual damages in either the answering affidavit or his answers to defendants' interrogatories. Therefore, if plaintiff is to maintain the action, he must be held to the more rigorous standard of actual malice enunciated in *New York Times Co. v Sullivan* (376 US 254). (See *France v St. Clare's Hosp. & Health Center,* 82 AD2d 1, 4-5; *Salomone v MacMillan Pub. Co.,* 77 AD2d 501, 502; see, also, *Moran v Hearst Corp.,* 40 NY2d 1071, 1072 [concurring opn of Fuchsberg, J.]; *Commercial Programming Unlimited v Columbia Broadcasting Systems,* 50 AD2d 351, 354.) Nonetheless, even under the more stringent actual malice standard, defendants were not entitled to summary judgment. Defendant Padovano submitted a lengthy affidavit detailing his investigation and his sources for

the various statements. Plaintiff in his answering affidavit denies making certain statements to Padovano with respect to his credentials and education. He further avers that prior to publication he discussed his actual credentials with Padovano and accurately depicted the nature of his practice. "Summary judgment, of course, should not be granted where there is any doubt as to the existence of a triable issue * * * or where the issue is '"arguable"' * * * '[w]hen reviewing a motion for summary judgment the focus of the court's concern is issue finding, not issue determination, and the affidavits should be scrutinized carefully in the light most favorable to the parties opposing the motion'" *(Palmerton v Envirogas,* 80 AD2d 996, 997). Plaintiff's affidavit is sufficient to raise triable issues of fact with respect to whether defendants *Herald-Journal* and Padovano proceeded with knowledge of the falsity of the articles or a reckless disregard of the truth. There is no indication that defendant Rogers was responsible for publication of the articles so that the complaint against him is properly dismissed. (Appeal from order of Onondaga Supreme Court, Balio, J. — summary judgment — libel action.) Present — Cardamone, J.P., Callahan, Doerr, Denman and Moule, JJ.