## GALLIGAN v. KELLY et al.

(Supreme Court, Special Term, New York County. November 21, 1894.)

1. LIBEL AND SLANDER—PRIVILEGE—ACTS OF PUBLIC OFFICERS.
   The act of the trustees of a school in collecting evidence in respect to the conduct of the principal, and sending it to the board of education, which alone had power to remove the principal, is privileged, as within the line of their public duty.

2. SAME—PUBLICATION.
   Sending a copy of such evidence to the principal, in order that she might answer the charges against her, is not a publication.

Action by Louise M. Galligan against Richard Kelly and others for libel. Plaintiff was formerly principal of public school No. 70, of the city of New York. The alleged libel was in taking the statement of witnesses in respect to plaintiff's conduct, and forwarding them to the board of education. Complaint dismissed.

For decision on appeal from order denying motion for change of venue, see 24 N. Y. Supp. 632.

Edwin J. Galligan and Louise M. Galligan, for plaintiff.
William N. Cohen, William C. Beecher, and Henry L. Scheuerman, for defendants.

BARRETT, J. The action proceeds upon an entire misapprehension of the duties of the defendants. The defendants were public officers,—trustees of the particular school in question. While they had no jurisdiction, under the statute, to remove a principal, it was their duty to see that a principal conducted herself properly; and, if she did not, it was their further duty to gather the evidence of derelictions, and present it to the forum or tribunal which had authority to discipline such principal. This action has been tried, seemingly, upon the theory that we are here to redress the wrong which the plaintiff claims resulted from her dismissal. If she was wronged thereby, the remedy is by certiorari to review the action of the board of education. She certainly cannot redress any such wrong by treating the evidence which was gathered for presentation to the board of education as libelous statements made by the defendants. The idea that the plaintiff was libeled because of the presentation of such evidence to the appropriate forum is, to say the least, farfetched. The defendants clearly did not libel the plaintiff, even if the witnesses who testified before them and the board of education did. If the defendants had reason to believe that the plaintiff had conducted herself in such a manner as to justify her removal, they were perfectly right in procuring the evidence of such misconduct. The question here is not whether she was guilty. That question has been determined by the appropriate forum, namely, the board of education, after a due hearing, according to law. Every step that the defendants took in bringing the matter before the board of education was plainly in the line of their public duty, and was consequently privileged. If they had submitted their charges to the board of education without any evidence to support them, it might, indeed, be said that they acted wantonly. In that case the board of education might properly and naturally have criticized them. The board might well have said, "Why do you make these charges, unless you yourselves have investigated them sufficiently to see that they call for a further investigation by us?" Had that been the case, the wrong would have been in submitting the charges without the very evidence which is here misstyled a "libel." In saying "misstyled," I mean as against these defendants, whatever it may be styled as against the persons who gave the testimony. Nor was the presentation of that evidence libelous merely because it was originally ex parte. The defendants were not bound to refuse to listen to statements made by apparently credible witnesses merely because the plaintiff was not present at the moment. The proper course was to reduce such statements to writing, and, instead of sending them directly to the board of education, to furnish a copy thereof to the plaintiff, and to give her an opportunity of an-

swering them. And this was precisely what they did, and in doing so they acted discreetly. Thus the plaintiff had a full opportunity of explanation before the defendants decided that the charges and evidence should be sent to the board of education for the only real and substantial trial which there could be in the matter. Let us see just what has been shown on that head. The plaintiff was notified to appear before the trustees. She did appear before them. A portion of the testimony was read to her, and the rest of it was furnished to her the same day. A week later she had an opportunity of presenting her side of the case. Now, surely, though the defendants had not jurisdiction to remove her, they acted with propriety and discretion in giving her an opportunity of presenting such matters in mitigation as might induce them not to send the charges forward. If, as the plaintiff seems to claim, they exceeded their jurisdiction even in giving her a hearing, she cannot well complain, for their action was in her interest and for her benefit. So much for the question of privilege. What the defendants did was strictly in the line of their official duty, and was therefore privileged.

As to the second question, there is not the slightest evidence of publication by the defendants. I regret that the plaintiff suffered so much time to be taken up in her cross-examination with regard to the simple though crucial fact respecting the delivery to her of the testimony. It took an unnecessarily long time to extract from her the few simple and salient facts on that head. In the end, however, the facts were quite clear. And what were they? Plainly, that when she left the defendants, at 5 o'clock on the afternoon of the 1st of April, she was told that the testimony would be furnished to her, in order that she might come later and explain it. She did not take it away herself, but had hardly reached home before the janitor of the school building, under the direction of the defendants, brought it to her house, left it there with her sister (really, however, with herself), and took her own receipt for it. And yet there was all this fencing as to whether it was in her individual possession. I regret that there was not greater frankness on that head. Now, the testimony was not thus sent to the plaintiff for publication. It was sent for her own perusal and use,—not for her sister, or for any one else. It was sent to her for a specific purpose, and that purpose was a good and proper one, namely, to enable her to read it at her leisure, and to come later before the defendants, prepared to say what there was to say against it. If she chose to call a town meeting to hear it read, it was not the defendants' fault. The defendants did not send it to her for the perusal of her friends or relatives, nor for the inspection of the general public. If she chose to sit up all night with her friends, or allow them to read it, that was her own affair. The defendants had not sent it to be published in that manner, and they cannot be charged with the plaintiff's acts of publication. In fine, they were privileged to take the testimony to ascertain whether there ought to be a trial by the board of education, and that board has sustained them by a vote overwhelmingly preponderating against the plaintiff. It would be monstrous to hold that the testimony thus taken, and thus furnished to the board

of education, was a mere libelous statement made by the defendants maliciously to punish the plaintiff. Such a doctrine would be most disastrous in its effect upon the proper administration of our public school system. If, under such circumstances, these trustees could be treated as libelers, and punished in damages, for doing what they did, it would simply prevent all such officers from fearlessly guarding the sacred interests intrusted to them by the law. These officers are responsible for the due administration of the school system, and they should be upheld in all proper efforts to maintain discipline, and to compel obedience to the rules and by-laws laid down by the board of education. It would be strange indeed if they were to be held to a stricter rule of law than is held against a person who charges another with a crime in the ordinary criminal courts of the country. In that class of cases the person making the charge cannot be held for damages for malicious prosecution, even if the defendant is acquitted, unless the charge was made wantonly, maliciously, and without reasonable or probable cause to believe it to be true. Here the charges were certainly made with probable cause to believe them to be true, because they were made upon formal testimony, and because the plaintiff was actually removed by the appropriate tribunal. If such an action as this could be maintained upon such facts, it would be impossible to induce any prudent citizen to accept such a position as that of school trustee. He would either be held responsible by the people for failure to do his plain duty, or he would be held responsible by the courts for doing his plain duty. Fortunately for the good government of the schools, the trustee is not between these alternatives. In my judgment, this action was ill-advised, and should never have been brought. It certainly cannot be sustained upon any principle or precedent appertaining to the law of libel. The complaint must accordingly be dismissed.